**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **LOUIS BRUCE** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No.: 1:09-cv-04837** |
| **v.** | ) | |
| | ) | **Judge Robert M. Dow, Jr.** |
| **CITY OF CHICAGO, VINCENT** | ) | |
| **VOGT, JOSEPH FOLEY AND** | ) | **Magistrate Judge Susan E. Cox** |
| **MARK WESSELHOFF** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

### DEFENDANT'S MOTION *IN LIMINE*

---

Defendants, City of Chicago ("City"), Chicago Police Officers Vincent Vogt ("Vogt"), Joseph Foley ("Foley") and Mark Wesselhoff ("Wesselhoff"),, by their attorneys, Grant Schumann, LLC, through Special Assistant Corporation Counsel, Anthony L. Schumann, respectfully move this Honorable Court *in limine* as follows:

1. **ANY EVIDENCE OF CHICAGO POLICE DEPARTMENT GENERAL ORDERS, RULES AND REGULATIONS.**

Violations of state statutes, local ordinances, or administrative or department regulations do not give rise to an action under section 1983, unless the rights are guaranteed under the United States Constitution. *See Davis v. Scherer*, 468 U.S. 183, 194 (1984); *Thompson v City of Chicago*, 472 F.3d 444, 455 (7th Cir. 2006); *Kraushaar v. Flanigan*, 45 F.3d 1040, 1048-49 (7th Cir. 1995); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Moore v. Marketplace Restaurant, Inc.,*754 F.2d 1336, 1349 (7th Cir. 1985). Furthermore, courts look to federal law, not state or municipal regulations, to determine the existence and scope of personal liberties protected by the "reasonableness" standard under the Fourth Amendment. *See Gordon v. Degelmann*, 29 F.3d

295, 301 (7th Cir. 1994); *Archie v. City of Racine*, 847 F.2d 1211, 1215-18 (7th Cir. 1988) (en banc); *see also Graham v. Connor*, 490 U.S. 386 (1989). Therefore, whether the Defendants or any police officer violated Chicago Police Department rules, regulations, or directives is irrelevant to Plaintiff's section 1983 claims. Fed. R. Evid. 401 & 402. If this Court were to permit Plaintiff to present evidence or suggest to the jury that the Defendants or other police officers may have breached some obligation they had to their employer through an alleged rule violation would be confusing to the jury and unfairly prejudicial to Defendants in the defense of this matter. Fed. R. Evid. 403. *See Walker v. City of Chicago*, 1992 WL 317188, *4 (N.D. Ill. Oct. 27, 1992).

The internal police guidelines are also irrelevant to Plaintiff's state law claims. Under Illinois law, a violation of self-imposed rules or internal guidelines, such as police department regulations and general orders, do not normally establish or impose a legal duty. *Morton v. City of Chicago*, 286 Ill.App.3d 444, 454 (1st Dist. 1997); *Blakenship v. Peoria Park District*, 269 Ill.App.3d 416, 422-23 (3rd Dist. 1995). The law is also well settled that such evidence should not constitute evidence of negligence, let alone willful and wanton misconduct. *Morton*, 286 Ill.App.3d at 454.

Accordingly, Plaintiff should not be permitted to inject the possibility of a rule violations into these proceedings. Pursuant to Fed. R. Evid. 401, 402, and 403, Plaintiff should not be allowed to argue, present evidence, or imply that Defendants or any police officer witness may have violated the rules and regulations of the Chicago Police Department in any involvement with Plaintiff they may have had.

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily

answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

## 2. ANY MENTION OF INDEMNITY AND MOTION TO STRIKE THE CITY OF CHICAGO FROM THE CASE CAPTION.

Defendants further move this Court for an Order *in limine* barring Plaintiff from offering any testimony, evidence, or argument indicating that the Defendant Police Officers may be indemnified against any judgment in this action. It is undisputed that the City has agreed to indemnify the officers for any compensatory damages assessed in this case. Thus, the only reason to mention the City is to signal the jury that deep pockets are available to pay any judgment. Such a signal runs afoul of federal and Illinois law that evidence of indemnification against liability is inadmissible as irrelevant and highly prejudicial to the issue of liability. *See* Fed. R. Evid. 411; *Walker v. Saenz*, 1992 WL 317188, *3 (N.D. Ill. Oct. 27, 1992); *Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994) (holding that instructions to jury on indemnification in § 1983 action required new trial); *Green v. Baron*, 879 F.2d 305, 310 (8th Cir. 1989) (stating that instructions concerning indemnification are extremely prejudicial); *Griffin v. Hillke*, 804 F.2d 1052, 1057 (8th Cir. 1986) (declaring indemnification instructions to constitute reversible error).

The mention the City of Chicago and indemnification is because there is no independent claim against the City which the jury is being asked to decide.  An indemnification claim is not a substantive law claim and the jury is not being asked to make any decision regarding indemnification. As a matter of law, acknowledged by all parties to this litigation, the City of Chicago is legally bound to indemnify the officers for any compensatory damages awarded due

3

to unlawful acts committed within the scope of their employment.  In the instant matter, the conduct complained of was alleged to have occurred within the scope of employment and Defendant City of Chicago does not dispute this.

In fact, no stand-alone count for "indemnification" exists in the civil rights context. The bringing of such a claim for indemnification as an ancillary claim is nothing more than a manner in which to allow the Court jurisdiction over the municipal employer in the event of a damages award against its employees. Otherwise, a Plaintiff would be required to bring a state court cause of action against the municipal employer to require indemnification as the successful plaintiff would have no federal question jurisdiction to ask the federal court to do the same. *See generally Wilson* v. *City a/Chicago,* 120 F.3d 681 (7th Cir. 1997).

Knowledge that the City of Chicago will indemnify Defendants for possible damages might encourage jurors to find for Plaintiff—regardless of the facts presented at trial. Such knowledge can also lead jurors to inflate an award out of sympathy or other irrelevant factors.

WHEREFORE, Defendants respectfully request that Plaintiff and their witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

Furthermore, Defendants respectfully request that the City of Chicago be stricken from the caption of the case.

## 3.   ANY MENTION THAT DEFENSE LAWYERS WORK ON BEHALF THE CITY OF CHICAGO.

Defense counsel's legal services agreement with the City of Chicago is irrelevant to the

substantive issues of this case. As such, Plaintiff should be barred from making any reference to Defendants' attorneys or any of the parties as "Corporation Counsel," "Assistant Corporation Counsel," "The City lawyers," "Special Assistant Corporation Counsel," Contract lawyers" or "The City," or similar terms. Defendants' motion should be granted because reference to Defendants' attorneys' nature and affiliation with the City is improper and will serve no purpose other than to improperly suggest to the jury that the City of Chicago – not the Defendants – will pay any judgment in this case. Thus, the only reason to mention the City is to signal the jury that deep pockets are available to pay any judgment. Such a signal runs afoul of federal and Illinois law that evidence of indemnification against liability is inadmissible as irrelevant and highly prejudicial to the issue of liability. *See* Fed. R. Evid. 411; *Walker v. Saenz*, 1992 WL 317188, *3 (N.D. Ill. Oct. 27, 1992); *Larez v. Holcomb*, 16 F.3d 1513, 1518 (9th Cir. 1994) (holding that instructions to jury on indemnification in § 1983 action required new trial); *Green v. Baron*, 879 F.2d 305, 310 (8th Cir. 1989) (stating that instructions concerning indemnification are extremely prejudicial); *Griffin v. Hillke*, 804 F.2d 1052, 1057 (8th Cir. 1986) (declaring indemnification instructions to constitute reversible error). The lawyers on both sides represent clients and all titles (and the stigmas that come with them) should be left out of this case.

WHEREFORE, Defendants respectfully request that Plaintiff and their witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

**4.     ANY EVIDENCE REGARDING A "CODE OF SILENCE," OR ARGUING THAT THE POLICE GENERALLY PROTECT OR COVER-UP FOR OTHER**

**OFFICERS' MISCONDUCT.**

Generalized allegations of a police "code of silence" or that police officers cover up for other police officers "are akin to the conclusion that all mechanics, when they have the opportunity, assess over-charges for unnecessary repair; that all politicians, when the public's back is turned, accept bribes; and that all taxpayers, when they think they can get away with it, cheat on their taxes -- and no one ever tells. In a court of law, however justice is dispensed based on evidence of articulated and proven facts, not on generalized assumptions and prejudices." *Sanders v. City of Indianapolis*, 837 F. Supp. 959, 963 (S.D. Ind. 1992). The sole purpose for the introduction of this testimony is to invoke images in the minds of jurors that officers run amok to protect their own like they have seen in so many movies. The jury's decision, however, must be based upon facts not the speculation or rumination of witnesses regarding the general nature of police officers. In that regard this evidence is no different from bad acts evidence except that it is more illusory because it has no particular connection to the Defendants. Accordingly, pursuant to Rules 401, 402 and 403, Plaintiff should be barred from adducing or presenting evidence of any alleged police "code of silence." *See* Fed. R. Evid. 401, 402 & 403.

It is axiomatic that evidence is admissible at trial only if it makes the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *People* v. *Lewis,* 165 Ill. 2d 305, 329 (1995). Moreover, even when evidence is relevant, it should be excluded "if its prejudicial effect substantially outweighs its probative value." *Id*

Likewise, because such generalized evidence has no specific relationship to the officers testifying in this case, it is not relevant to the jury's determination of their credibility. *Shaw* v. *City of New York,* No. 95 Civ. 9325, 1997 WL 187352, at *7-8 (S.D.N.Y. Apr. 15, 1997)(

excluding evidence of blue "code of silence" by which New York City police officers protect

fellow officers and lie if necessary to do so); *Heflin* v. *City of Chicago,* No. 95 C 1990, 1996 WL

28238, at *4 (N.D. Ill. 1996)(granting unopposed motion to exclude evidence that police officers

generally protect or cover-up other officers' misconduct). Moreover, as the court warned in

*Shaw:*

> If [evidence of a police "code of silence"] were held admissible here, it logically would be admissible in every suit, civil or criminal, in which a police officer was alleged to be lying to support the testimony of a fellow police officer. Indeed, it would be admissible in every civil and criminal case in which even a single police officer testified. The Court declines to establish such a precedent.

*Shaw,* 1997 WL 187352, at *7-8. This Court too should decline to open the floodgates to such

evidence.

Furthermore, even if general evidence of a police "code of silence" were somehow

relevant to the matters at issue or the credibility of testimony in this case, and it is not, this Court

should nonetheless exclude such evidence because its prejudicial effect substantially outweighs

its probative value. M. Graham, *Cleary & Graham's Handbook on Illinois Evidence* § 4.03.1 *(ih*

ed. 1997). Indeed, given its lack of connection to the specific issues and persons in this case, "its

probative value is very, very slim, and its prejudicial [impact] is very, very high." *Shaw,* 1997

WL 187352, at *7. Accordingly, this Court should bar Plaintiff from presenting at trial any

testimony, evidence or argument that police officers in general lie, conspIre, cover-up or

otherwise maintain a "code of silence" to protect their fellow officers.

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and

attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily

answer, introduce any physical evidence concerning or attempt to convey to the jury at any

time during these proceedings in any manner, directly or indirectly, the subject matter as

stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

5.     **ANY TESTIMONY, EVIDENCE, ARGUMENT OR COMMENTS REGARDING OTHER EVENTS CONCERNING ALLEGATIONS OF POLICE MISCONDUCT.**

In recent years and months, allegations of misconduct by members of the Chicago Police Department have received, and at times even dominated media coverage in the city's major newspapers, local news broadcasts and on the internet. Certain allegations have even received nation-wide coverage. Some of the most publicized events include the videotaped incident of off-duty police officer Anthony Abbate attacking a bartender; the recent dismissal of criminal charges against an off-duty police officer charged with a DUI in conjunction with a fatal accident; the incident of six off-duty officers allegedly attacking and beating four bar patrons at the Jefferson Tap & Grille; and the recent indictments of a number of police officers for on-duty conduct, especially in the on-going Special Operations Section criminal investigation. Defendants do not condone any of this alleged conduct and should not be forced to defend the conduct of others in this Court.

Defendants have absolutely nothing to do with any of these publicized incidents and there are absolutely no allegations of any such misconduct in this case. As such, any testimony, evidence, argument or comments regarding these publicized events should be barred. *See* Fed. R. Evid. 401, 402, & 403. References to other allegations of police misconduct during this trial can only serve to inflame the Jury against the police in general, and against the Defendants in this particular case. Comments and implied references to this affect have no probative value and are irrelevant to the issues presented. *Saunders v. City of Chicago*, 320 F.Supp.2d 735, 740 (N.D. Ill.2004) (granting identical motion); *Heflin v. City of Chicago*, No. 95 C 1990, 1996 WL 28238 (N.D. Ill. 1996) (Conlon, J).

Therefore, the Defendants respectfully request that this Court enter an order providing that Plaintiff, his attorneys, and his witnesses are barred from mentioning, referring to, interrogating or questioning, introducing evidence or arguing from recent events of police misconduct including, but not limited to those listed in the foregoing motion.

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

**6.      ALL NON-PARTY WITNESSES SHOULD BE EXCLUDED FROM THE COURTROOM DURING OPENING STATEMENTS AND TRIAL TESTIMONY.**

Defendants move this Court to exclude all witnesses (other than the parties) from the courtroom during the opening statements and testimony of any and all other witnesses. Such an order is proper because it prevents the contamination of the testimony of potential witnesses.

WHEREFORE, Defendants respectfully request that the Court Order the exclusion of all non-party witnesses during opening statements and testimony.

**7.      ANY REFERENCE TO "SENDING A MESSAGE TO THE CITY."**

Plaintiff should be prohibited from making any argument that the jury should "send a message" to the City with its verdict, or that the jury should somehow punish the City with its verdict. Sending a message, or punishment, cannot form the basis for any damages other than punitive damages. As a matter of law, Plaintiff cannot recover punitive damages from the City as a result of this occurrence. *See* 745 ILCS 10/2-102; *City of Newport v. Fact Concerts,* 453 U.S. 247,271(1981). Accordingly, Plaintiff should not be permitted to imply to the jury that

9

punishment can serve as a legitimate basis for an award against the City. Any such implication would be unfairly prejudicial to the Police Officer Defendants. *See* Fed. R. Evid. 403.

Moreover, Plaintiff's only "claims" against the City to be litigated during the trial are grounded in respondeat superior and indemnification. Accordingly, Plaintiff have no substantive claims against the City and any reference to the City will serve no purpose other than to improperly suggest to the jury that the City of Chicago, a "deep pocket," will pay.

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

**8. BAR EVIDENCE, TESTIMONY, OR ARGUMENT REGARDING ANY COMPLAINTS LISTED ON THE DEFENDANT OFFICERS' COMPLAINT REGISTER HISTORIES, THE DEFENDANT OFFICERS' COMPLAINT REGISTER HISTORIES THEMSELVES, THE UNDERLYING COMPLAINT REGISTER FILE IN THIS CASE AND PRIOR LAWSUITS.**

In order to prevail on their claims, Plaintiff will have to prove that the Defendants engaged in the wrongful conduct alleged. Plaintiff may seek to prove their claims against the Defendant Officers by presenting evidence in the form of the specific complaints contained on the Complaint Register ("C.R.") histories of the Defendant Officers that have been initiated by unrelated third parties. These unrelated C.R.s may contain allegations that Plaintiff may claim somehow show a pattern of conduct reflecting a failure to take proper police action and abuse. Hence, Plaintiff may hope to introduce propensity evidence in order to show that Defendants engaged in misconduct here. Because this evidence violates the Federal Rules of Evidence, it should be barred from introduction.

First and foremost, this evidence is not relevant. Evidence is relevant if it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. *See* Fed. R. Evid. 401 (West 2007). Evidence or testimony that does not directly relate to Plaintiff's allegations is wholly irrelevant to the questions raised by Plaintiff's claims. Therefore, any such evidence or testimony should not be admitted. Moreover, any probative value it may have is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and its misleading the jury, particularly because no policy-based claim exists in this matter. Fed. R. Evid. 402 and 403; *Heflin* v. *City a/Chicago,* No. 95 C 1990, 1996 WL 28238 (N.D.Ill. 1996) (J. Conlon).

Further, the mere allegations of a complaint as reflected in the C.R. histories contain hearsay that is inadmissible under Rule 802 and for which no exceptions apply. *See* Fed. R. Evid. 802, 803 (West 2007). Moreover, any evidence or testimony regarding any alleged misconduct attributed to certain police officers in other instances would be barred as inadmissible under Rule 404(b). Rule 404(b) of the Federal Rules of Evidence provides that "evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." *See* Fed. R. Evid. 404(b) (West 2007).

Rule 404(b) does provide that evidence of other acts may be admissible as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. However, such evidence would only be admissible if it passes the following four-prong test: (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the

probative value of the evidence is not outweighed by the danger of unfair prejudice. *See Treece v. Hochstetler,* 213 F.3d 360, 363 (7th Cir. 2000).

Evidence of complaints listed on C.R. histories fails to pass any of the four-prongs of the test. First, the C.R. allegations do not establish any matter in issue in this case, but would be merely used to show that the Defendant Officers have the propensity to commit certain misconduct. Second, the alleged other acts are not sufficiently similar to be relevant. Third, the existence of a C.R. is in no way sufficient to support a jury finding that the alleged similar act was actually committed. The C.R. merely reflects that a citizen called the Independent Police Review Authority ("IPRA"), formerly the Office of Professional Standards, and made a complaint against a police officer. IPRA then investigates the claims, and makes a determination whether the complaint is sustained or not sustained. Therefore, Plaintiff would attempt to use mere allegations against the Defendants as actual evidence, which is contrary to the very purpose of this prong of the test.

Even if the evidence passed the first three prongs of the test, the probative value of the unrelated C.R.s is greatly outweighed by the danger of unfair prejudice. If a jury were bombarded with third-party allegations of misconduct against Defendants, they would be more likely to decide the case on an improper basis rather than on the actual evidence presented. *U.S. v. Pulido,* 69 F.3d 192, 201 (7th Cir. 1995); *see Manuel v. City of Chicago*, 335 F.3d 592 (7th Cir. 2003) (finding the slight probative value of prior bad acts evidence outweighed by potential for unfair prejudice, juror confusion and delay). Such a result would violate Rule 404(b), as well as Rule 403, which allows for the exclusion of evidence if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and it would mislead the jury. *See* Fed. R. Evid. 403 (West 2007).

If the complaints listed on the Defendant Officers' C.R. histories are deemed admissible, the Defendants will be forced to establish that the acts alleged in each of the C.R.s did not occur, which would result in a series of mini-trials, one for each of the C.R.s introduced. *See Jones v. Harelman,* 869 F.2d 1023, 1027 (7th Cir. 1989) (admission of 404(b) evidence would necessitate "trial within a trial"); *Vukadinovich v. Zentz,* 995 F.2d 750, 755-56 (7th Cir. 1993) (complaints against officers arising from dissimilar events properly excluded). This would delay the proceedings, and would improperly shift the focus of the trial away from Plaintiff's claims.

Additionally, Plaintiff should be barred from presenting evidence related to the underling C.R. in this case. The C.R. file itself contains inadmissible hearsay documents and as such no part of it should be admitted into evidence. Whether or not IPRA conducted an internal investigation regarding Plaintiff' complaint is irrelevant to the issue of whether or not the Defendant Officers committed constitutional or state causes of action. Any evidence that an investigation was conducted by IPRA would create a presumption in the minds of jurors that the Defendant Officers engaged in the conduct alleged by Plaintiff, thereby creating an unfair prejudice to the Defendants that substantially outweighs the probative value of the investigation. *See* Fed. R. Evid. 403 (West 2007). Furthermore, evidence pertaining to the C.R. investigation would confuse jury members over the issues to be decided in this case, as they may feel that they need to decide whether IPRA's C.R. investigation was properly conducted. *See id.* Since evidence of the underlying C.R. investigation in this case would necessitate the presenting of hearsay evidence, is irrelevant, and would result in confusion and unfair prejudice that substantially outweighs its probative value, such evidence should be also be barred.

Moreover, those prior unfounded CR files involve complainants who either refused to

sign a sworn affidavit as to their underlying accusations, or refused to cooperate in any subsequent investigation. As such, those complaints lack any indicia of reliability necessary to make them admissible or relevant. *See Treece* v. *Hochstetler,* 213 F.3d 360,363 (7th Cir. 2000).

Finally, allegations of prior lawsuits and other unfounded C.R.s against Tuman or other Chicago Police Officers is nothing more than so-called "propensity" evidence, which clearly is inadmissible. *People* v. *Childress,* 338 I11.App.3d 540, 551, 789 N.E.2d 330, 338 (1 st Dist. 2003)("[Federal] Rule [of Evidence] 404(b) was substantially similar to Illinois common law regarding admissibility of other crimes."). Propensity evidence, however, is inadmissible under Fed. R. Evid. 404(b), to prove that a party acted on the occasion in question consistent with his alleged bad character. *See Huddleston* v. *Us.,* 485 U.S. 681, 685 (1988); *Us.* v. *Shriver, 842* F.2d 968, 974 (7th Cir. 1988).

In this case, Plaintiff s only purpose in introducing or suggesting such evidence would be to attempt to taint the jury into believing that accusations of alleged misconduct had been brought against the officers in the past, and therefore it is likely that the officer acted in a similar manner under the circumstances presented here. Rule 404(b) only permits the admission of evidence of other acts, if such evidence is directed toward establishing a matter in issue other than a defendant's propensity to commit the act charged. *Us.* v. *Zapata,* 871 F.2d 616, 620-21 (7th Cir. 1989). Plaintiff will not be able to satisfy his burden under Rule 404(b) of explicitly articulating which exception to the general rule applies.

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and

that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

9.    **ANY EVIDENCE OR ARGUMENT REGARDING DEFENDANTS ALLEGED FAILURE TO CALL WITNESSES.**

Defendants anticipate that Plaintiff might attempt to argue that Defendants should have called other witnesses or argue that Defendants lack other witnesses. However, this is a civil case, and as such, Plaintiff bears the burden of proving his case. Defendants are under no obligation to put on a defense or call witnesses in order to support a verdict in their favor. Hence, Defendants are under no duty to call any witnesses at trial, and any argument by Plaintiff in this regard would improperly shift the burden of proof to the Defendants which is contrary to the Plaintiff s burden and would be error.

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

10.    **ANY MENTION OR ARGUMENTS DURING JURY SELECTION RELATED TO CONDITIONING THE JURY TO AWARD A SPECIFIC AMOUNT OF MONEY DAMAGES**

Plaintiff s counsel should not be permitted to inquire of the venire whether they think that any amount of money is too little or too much for a certain type of case. These questions are designed not to determine whether jurors will be fair and impartial, but rather designed to probe the result that the plaintiffs can expect from jurors in a particular case. This is not proper purpose of questioning during voir dire; accordingly, it is appropriate for the Court to preclude such

questioning. *Spray-Rite Service Corp* v. *Monsanto,*. 684 F.2d 1226 *(ih* Cir. 1982) (a "Golden Rule" appeal in which the jury is asked to put itself in the plaintiff s position is universally recognized as improper because it encourages the jury to depart from neutrality and to decide the case on the basis of personal interest and bias, rather than on evidence"). See also *Dotson* v. *Sears, Roebuck and Co.,* 157 Ill.App.3d 1036, 1042 (1 st Dist. 1987).

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

## 11.     TO BAR PLAINTIFF'S COUNSEL FROM MAKING AN IMPROPER OPENING STATEMENT

Plaintiff s counsel should not be permitted to argue in his opening statement. The purpose of opening statement is to state what evidence will be presented, make it easier for the jurors to understand what is to follow, and to relate parts of the evidence and testimony to the whole. *United States* v. *Dinitz,* 424 U.S. 600, 612 (1976). It is not occasion for argument. *Id.* Plaintiff s counsel may attempt to convert his opening statement into an improper opening argument. Defense counsel has had occasion to witness Plaintiffs counsel's conduct other cases alleging constitutional violations of citizens by Chicago police officers. In those instances, Plaintiff s counsel has delivered improper opening statements which have necessitated dozens of objections. By arguing during the opening statement, Plaintiff will seek to unduly influence the way in which the jury will perceive Defendant Officer Tuman, the evidence and ultimately prejudice Defendant. Argument during opening statement is improper and the Court should bar

such argument.

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

**12. TO BAR PLAINTIFF COUNSEL FROM MAKING AN IMPROPER OPENING STATEMENT FROM ARGUING AN INSUFFICIENT INVESTIGATION OCCURRED, INCLUDING LACK OF FINGERPRINT EVIDENCE**

Defendants believe Plaintiff may try to argue that Defendants should have conducted a fingerprint examination of the baggies containing heroin that were recovered from Plaintiff. Defendants believe, based on requests to admit issued by plaintiff and responded to by Defendants, Plaintiff will argue an investigation should have continued or that further forensic evidence should have been collected and examined. Any such evidence or argument of this nature should be barred because it is irrelevant, prejudicial, and immaterial to the central issue from which all Plaintiff s claims flow, specifically, whether probable cause to arrest Plaintiff existed at the time and place of his arrest.

Plaintiff is not entitled to a perfect criminal investigation and there is no requirement that only the guilty be tried, let alone arrested. "It is not the duty of the police to perform the perfect investigation, and 'one suspected of committing a crime has no constitutional right to an investigation by police which will uncover all exculpatory evidence. '" *Nugent* v. *Hayes,* 88 F.Supp.2d 862, 868 (N.D. Ill. 2000) *citing Davis* v. *Owens,* 973 F.2d 574, 577 (7th Cir.1992). "In fact, 'once police officers have discovered sufficient facts to establish probable cause, they

have no constitutional obligation to conduct any further investigation in hopes of uncovering potentially exculpatory evidence. '" *Id* Argument or insinuation that Defendant Tuman should have done more to investigate Plaintiff s purchase and subsequent possession of heroin has no place in this trial.

Moreover, there is no constitutional obligation for police to pursue scientific tests or similar investigative leads. *See Arizona* v. *Youngblood,* 488 U. S. 51, 59 (1988) (no constitutional duty to perform particular tests). Any argument to the contrary is inconsistent with wellestablished law. The police have no duty to investigate extenuating circumstances or search for exculpatory evidence once probable cause has been established. *Mustafa* v. *City of Chi.,* 442 F.3d 544, 548 (7th Cir.2006) *See also Kelley* v. *Myler,* 149 F.3d 641, 647 (7th Cir.1998) ("[P]robable cause does not depend on the witness turning out to have been right; it's what the police know, not whether they know the truth, that matters."). Any argument that other evidence may have existed or that the police should have learned more before arresting Plaintiff or sought any kind of fingerprint or forensic evidence is irrelevant, unduly prejudicial, and should be barred.

WHEREFORE, Defendants respectfully request that Plaintiff and his witnesses and attorneys be ordered not to mention, refer to, adduce, interrogate concerning, voluntarily answer, introduce any physical evidence concerning or attempt to convey to the jury at any time during these proceedings in any manner, directly or indirectly, the subject matter as stated above, and that each counsel be instructed to warn and caution each and every witness under their control testifying in this case to strictly comply with the ruling of the Court.

**WHEREFORE,** Defendants respectfully requests that this Honorable Court enter the above motions *in limine*.

Dated: February 25, 2011

Respectfully submitted,

By:    */s/: Anthony L. Schumann*
        ANTHONY L. SCHUMANN

Anthony L. Schumann
Grant Schumann, LLC
230 West Monroe Street, Suite 240
Chicago, Illinois 60606
T: (312) 551-0111
F: (312) 551-0112