# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert M. Dow, Jr. | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 09 C 4837 | **DATE** | 7/29/2011 |
| **CASE TITLE** | Louis Bruce vs. City of Chicago, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth below, the Court grants in part and denies in part Defendants' motions in limine [32] and grants Defendants' motion to direct and allow evidence [38]. The Court also grants in part and denies in part Plaintiff's motions in limine [33].

■[ For further details see text below.]                                   Docketing to mail notices.

## STATEMENT

This case arises from two incidents that occurred on August 13 and August 16, 2008, in the City of Chicago. Plaintiff subsequently brought this civil rights action under 42 U.S.C. § 1983, alleging that Defendants Vincent Vogt, Joseph Foley, and Mark Wesselhoff violated his constitutional rights by unreasonably seizing him, falsely arresting him, and maliciously prosecuting him. Defendants deny Plaintiff's allegations and maintain that there was probable cause for Plaintiff's arrest. The parties have submitted their proposed Final Pre-Trial Order and have fully briefed a number of motions *in limine*, which the Court addresses below.

**I.   Standard**

The Federal Rules of Evidence do not explicitly authorize *in limine* rulings. However, the District Court has inherent authority to manage the course of trials. Fed. R. Evid. 103(c); *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). District courts have broad discretion in ruling on motions *in limine*. *Jenkins v. Chrysler Motors Corp.*, 316 F. 3d 663, 664 (7th Cir. 2002). However, evidence should be excluded only when inadmissible on all possible grounds. *Hawthorne Partners v. AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). As a result, in some instances courts should defer rulings until trial, particularly where context would be helpful in determining matters such as relevancy, foundation, and potential prejudice. See *id*. A pre-trial ruling denying a motion *in limine* does not automatically mean that all evidence contested in the motion will be admitted at trial. *Id*. at 1041. And while a pre-trial ruling granting a motion *in limine* does bar the introduction of certain evidence, trial judges remain free to alter previously issued *in limine* rulings, within the bounds of sound judicial discretion. *Luce*, 469 U.S. at 41-42.

**II.   Defendants' Motions *in Limine* [32]**

   1.   *To Bar Any Evidence of Chicago Police Department General Orders, Rules, and Regulations*

**STATEMENT**

The seminal case in this Circuit on the admissibility of testimony, evidence, and argument pertaining to rules, regulations, standards, and General Orders of police or sheriff's departments is *Thompson v. City of Chicago*, 472 F.3d 444 (7th Cir. 2006). *Thompson* involved a § 1983 claim (for excessive force) and a state law claim (for wrongful death) arising out of the arrest of the plaintiff. The district court granted a motion *in limine* seeking to "exclude any reference in testimony, evidence, or argument to the CPD's General Orders, policies, and procedures." *Id*. at 449 & n.12 (explaining the slight discrepancy between the motion that the court granted and the text of the docket entry reflecting the granting of the motion). The Seventh Circuit affirmed the district court's ruling, both with respect to the use of General Orders as evidence of the federal constitutional violation and as evidence in support of the state law claim.

As to the constitutional violation, the Seventh Circuit categorically stated that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established." *Thompson*, 472 F.3d at 455 (emphasis added); see also *Whren v. United States*, 517 U.S. 806, 815 (1996) (holding that internal police department rules are an unreliable guide to measuring the reasonableness of police conduct); *Scott v. Edinburg*, 346 F.3d 752, 760 (7th Cir. 2003) (holding that § 1983 "protects plaintiffs from constitutional violations, not violations of state laws or, in this case, departmental regulations and police practices"). In elaborating on its ruling, the Seventh Circuit explained that while evidence, testimony, or argument concerning possible violations of General Orders, rules, or regulations may be relevant to "discipline, promotion, or salary decisions" made by the Defendants' superiors, that kind of information is "immaterial" in proceedings before a district court on claims of constitutional violations and therefore "properly excluded" in rulings on motions *in limine*. *Thompson*, 472 F.3d at 455. For all of these reasons, the existence of the General Orders cannot be used in this case to show that the Plaintiff's constitutional rights were violated.

Defendants also contend that testimony, evidence, and argument pertaining to rules, regulations, standards, and General Orders would be improper as to Plaintiff's state law claims. In *Thompson*, the Seventh Circuit "assume[d], without deciding, that the CPD's General Orders were relevant to [Plaintiffs'] wrongful death claim," but nevertheless "conclude[d] that they were properly excluded under Rule 403." 472 F.3d at 456. Although the statutory wrongful death claim at issue in *Thompson* appears to impose liability under a negligence standard (see *id*. at 457; see also 740 ILCS 180/1; *Leavitt v. Farwell Tower Ltd. P'ship*, 252 Ill. App. 3d 260, 264 (1993)), the Seventh Circuit relied on Illinois case law holding that "violation of self-imposed rules or internal guidelines * * * does not normally impose a general duty, *let alone constitute evidence of negligence, or beyond that, willful and wanton conduct*." *Thompson*, 472 F.3d at 457 (emphasis added) (quoting *Morton v. City of Chicago*, 286 Ill. App. 3d 444 (1997)). Moreover, in completing its Rule 403 analysis, the Seventh Circuit expressly addressed – and rejected – the notion that a limiting instruction could render evidence of a failure to adhere to General Orders admissible. *Id*. As the court explained, "[a]ny limiting instruction explaining to the jury that, although General Orders do not create a duty on the part of an officer and can only be used as evidence of a breach of protocol in a disciplinary proceeding – and that they could not be considered in conjunction with the plaintiffs' § 1983 claims – would have led to unnecessary and detrimental jury confusion." *Id*.

Thus, on the basis of the Seventh Circuit's decision in *Thompson*, any attempt to use General Orders, rules, or policies of the CPD as evidence of a federal constitutional violation appears to be forbidden under Rule 401. *Thompson*, 472 F.3d at 454. In addition, under *Thompson*, any effort to use such General Orders, rules, or policies in support of a state law cause of action that applies a negligence or willful and wanton standard appears to face, at a minimum, a very high hurdle under Rule 403. *Id*. at 457.

In his opposition to Defendant's motion, Plaintiff cites several cases from this district in which violations of General Orders or rules have been permitted to be brought to the jury's attention. However, all of those cases

**STATEMENT**

were decided prior to *Thompson* and some of them are flatly inconsistent with *Thompson*'s teachings. Compare *Charles v. Cotter*, 867 F. Supp. 648, 664 (N.D. Ill. 1994) (finding that "evidence that the defendants violated police rules, regulations, etc. to be relevant and probative with respect to [plaintiff's] claim that the defendants violated his constitutional rights" and denying motion *in limine* on that basis) with *Thompson*, 472 F.3d at 455 (stating flatly that "the violation of police regulations or even a state law is *completely immaterial* as to the question of whether a violation of the federal constitution has been established") (emphasis added); *id.* ("Whether Officer Hespe's conduct conformed with the internal CPD General Orders concerning the use of force on an assailant was *irrelevant* to the jury's determination" of whether the officer's actions violated the Fourth Amendment) (emphasis added).

While it is clear under *Thompson* that (i) the proponent of such evidence, testimony, or argument has a heavy burden to shoulder under Rule 401 and Rule 403, and (ii) limiting instructions may not be a viable means of overcoming Rule 403 issues, the Court cannot conclude definitively that there is no scenario in which General Orders, rules, or regulations conceivably could come into this case. Put differently, to the extent that the door remains open under *Thompson*, it is only slightly ajar. See *Via*, 2007 WL 495287, at *6 ("*Thompson* did not address the potential admissibility of evidence showing a violation of internal agency rules and procedures with regard to a claim for punitive damages").

In light of the foregoing, the Court grants in part Defendants' motion *in limine* and bars any testimony, evidence, or argument regarding any CPD General Orders, policies, or procedures in support of Plaintiff's § 1983 liability claims. The Court reserves its decision as to any such testimony, evidence, or argument in support of a punitive damages claim or in other circumstances not foreclosed by *Thompson* and *Morton*. Should Plaintiff seek to introduce testimony, evidence, or argument regarding any CPD Office General Orders, policies, or procedures in those limited circumstances, counsel for Plaintiff must notify the Court and counsel for Defendants outside the presence of the jury and with sufficient advance notice to permit analysis under Rules 401 and 403 in light of the applicable Seventh Circuit or Illinois case law.

   2.   *To bar any mention of indemnity and motion to strike the City of Chicago from the case caption*

The City of Chicago is responsible for indemnifying compensatory damage awards Plaintiff may receive against Defendants, because it is undisputed that Defendants were acting within the scope of their employment at the time of the incident that gave rise to this action. Defendants seek to exclude any references to the City of Chicago's indemnification obligations on the ground that such obligations are irrelevant to the issues of liability that are at issue in this case. Defendants further contend that they would suffer prejudice if the jury were apprised of the City's indemnity obligations, because jurors may be more likely to find for Plaintiff on liability or inflate a compensatory damages award if they knew that Defendants themselves would not be on the hook financially.

The Seventh Circuit has sided with Defendants on this issue to a point, holding that "[i]n the general case courts exclude evidence of indemnification out of a fear that it will encourage a jury to inflate its damages award because it knows the government – not the individual defendants – is footing the bill." *Lawson v. Trowbridge*, 153 F.3d 368, 379 (7th Cir. 1998); see also *Kemezy v. Peters*, 79 F.3d 33, 37 (7th Cir. 1996) ("When the defendant is to be fully indemnified, such evidence, far from being required, is inadmissible"). However, when defendants who benefit from a right to indemnification nevertheless claim an inability to pay damages, such defendants are deemed to have "opened the door" to evidence of the statutory entitlement to indemnification. In their reply brief, Defendants stated that they "do not plan to put into evidence any information concerning the Defendant Officer's finances." Thus, the Court grants in part Defendant's motion in limine #2. Evidence of indemnification is inadmissible unless defendants open the door by injecting their personal financial circumstances into the case. Additionally, if Defendants choose to "apprise the jury of the fact that the individual

officers will have to bear [punitive] damages out of their own pockets," then "fairness would dictate that the jury also be informed of the true situation (indemnification) as to compensatory damages" (*Galvan*, 2006 WL 1343680, at *2), subject to an appropriate limiting instruction that "Defendants' finances address punitive damages only." *Townsend*, 287 F. Supp. 2d at 874.

At this time, the Court will not strike the City of Chicago from the caption because Plaintiff has asserted a state law claim for respondeat superior against the City. The City is a party to the case and should remain in the case caption. The portion of motion in limine #2 directed at striking the City from the caption is denied.

> 3. *To bar any mention that defense lawyers work on behalf of the City of Chicago*

Defendants' motion seeks an order barring Plaintiff from referring to Defendants' attorneys as "City lawyers," "corporation counsel," or "the City." Plaintiff's counsel states in the response brief that she "does not intend to refer to opposing counsel as 'corporation counsel.'" However, as also pointed out by Plaintiff, it is proper to inform the jury whom the lawyers represent. The Court will accurately introduce counsel and their clients at the start of trial. Consistent with the Court's ruling on Defendants' motion in limine #2, Plaintiff should not refer gratuitously to defense counsel as "corporation counsel" or "City lawyers." To the extent that either side needs to refer to opposing counsel, it should be by name or a designation such as "Plaintiff's counsel" or "defense counsel." Defendants' motion in limine #3 is granted in part, consistent with the discussion above.

> 4. *To bar any evidence regarding a "code of silence," or arguing that the police generally protect and cover-up for other officer's misconduct*

Defendants seek to bar evidence or arguments about a "code of silence." Plaintiff has indicated in his response that he does not have a plan to introduce evidence about a "code of silence." However, Plaintiff indicates that he intends to cross-examine and argue on the issue of bias and that the code of silence may be properly raised in this context.

Defendants argue that such evidence is akin to prior bad acts evidence and would violate Federal Rules of Evidence 401, 402, and 403. However, "[p]roof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony." *United States v. Abel,* 469 U.S. 45, 52, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). Indeed, "[a] party's and a witness's common group membership is probative of bias * * *." *Townsend v. Benya,* 287 F. Supp. 2d 868, 876 (N.D. Ill. 2003). Thus, to the extent that Plaintiff focuses on the officers and incidents involved in this case, Plaintiff may explore the possibility that the defense witnesses in this case are biased because of loyalty to one another. See, *e.g., Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004); *Galvan v. Norberg*, 2006 WL 1343680, at *3 (N.D. Ill. May 10, 2006) (denying motion in limine seeking to bar "code of silence" evidence since "evidence or argument of this type can go to the issue of the bias or motivation of witnesses"). However, the Court agrees with Defendants that generalized allegations—separate and apart from what may be true of the officers named as Defendants here—are not helpful and are akin to impermissible propensity evidence. *Maldonado v. Stinar,* No. 08 C 1954, 2010 WL 3075680, at *4 (N.D. Ill. Aug. 5, 2010) (allowing evidence of bias among the particular officers involved in the incident at issue there, while excluding generalized evidence of a "code of silence" or "blue wall" (citing *Christmas v. City of Chicago,* 691 F. Supp. 2d 811, 819 (N.D. Ill. 2010) (same), and *Moore v. City of Chicago,* No. 02 C 5130, 2008 WL 4549137, at *6 (Apr. 15, 2008) (same))); see also *Betts v. City of Chicago*, 2011 WL 1837805, at *5 (N.D. Ill. May 13, 211); *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. 2010) (barring plaintiff from presenting evidence showing police generally protect or cover up for each other and that there is a code of silence in the CPD). Thus, Defendants' fourth motion *in limine* is granted in part and denied in part as follows:

**STATEMENT**

(1) Plaintiff may present evidence that Defendant Officers are attempting to cover up the (allegedly) wrongful conduct arising from the incidents in this case; (2) Plaintiff may not use the terms "code of silence" or "blue wall" as these terms are unduly prejudicial; and (3) Plaintiff may not introduce evidence that law enforcement officers typically adhere to a "code of silence" or "blue wall" or seek to cover up misconduct in order to protect fellow officers.

> 5. *To bar any testimony, evidence, arguments, or comments regarding other events concerning allegations of police misconduct*

Defendants request that the Court bar Plaintiff from referring to other police misconduct, criminal investigations, or publicized scandals not connected to the allegations in this case. Defendants maintain that references to other allegations of police misconduct during trial can only serve to inflame the jury against the police in general and against Defendants in this particular case. See *Saunders v. City of Chicago*, 320 F. Supp. 2d 735, 740 (N.D. Ill. 2004) (granting identical motion and noting that comments and implied references to this affect have no probative value and are irrelevant to the issues presented). Plaintiff contends that Defendants' motion is premature and that other misconduct may turn out to be relevant. However, Plaintiff makes no effort to show why other police misconduct would be relevant in this case and why it would not be overly prejudicial. See, *e.g.*, *Caldwell v. City of Chicago*, 2010 WL 380696, at *3 (N.D. Ill. Jan. 28, 2010). Therefore, the Court provisionally grants Defendants' motion in limine #5, subject to reexamination at trial if Plaintiff can demonstrate that the evidence sought to be offered is both relevant and not overly prejudicial. Should Plaintiff seek to introduce such evidence at trial, counsel for Plaintiff must notify the Court and counsel for Defendants outside the presence of the jury and with sufficient advance notice to permit analysis in light of the applicable Seventh Circuit or Illinois case law.

> 6. *To exclude all witnesses (except parties) from the courtroom during opening statements and trial testimony*

The parties have agreed to this motion and it is therefore granted.

> 7. *To bar any reference to "sending a message to the city"*

Defendants seek to bar argument or innuendo that the City should be punished by referring to language indicating that the jury could "send a message" to the City of Chicago or the Chicago Police Department. Defendants argue that this argument is one for punitive damages, which cannot be assessed against a municipality on § 1983 claims. See *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."). While Plaintiff agrees that it would be improper to ask the jury to punish the City by awarding punitive damages, he contends that such an argument is proper because while "the point of a trial is not to send messages * * * message are quite often sent and can properly be asked for."

""The standard judicial formulation of the purpose of punitive damages is that it is to punish the defendant for reprehensible conduct and to deter him and others from engaging in similar conduct ." *Kemezy,* 79 F.3d at 34. By arguing that he'd like to "send a message" to Defendants, other Chicago police officers, and the City of Chicago as their employer, Plaintiff is essentially saying that he'd like to deter them from future misconduct. See *Cooper v. Casey,* 97 F.3d 914, 920 (7th Cir. 1996) (noting that a small amount of punitive damages would have an inadequate "deterrent effect" and would not serve as a "signal" to the defendants that certain misconduct was unacceptable). Plaintiff also points out that another district court in this circuit denied a similar motion *in limine* on grounds that the defendants "fail[ed] to show why a jury could not 'send a message' to the city by requiring it to pay actual damages." *Saunders v. City of Chicago,* 320 F. Supp. 2d 735, 738 (N.D. Ill. 2004).

**STATEMENT**

Defendants reply that allowing Plaintiff to argue that the jury should send a message to the City or Chicago Police Department would be tantamount to requesting that the jury award punitive or exemplary damages against the City.

Given that compensatory damages are limited to actual losses, this Court agrees that Plaintiff's argument that the jury should "send a message" is a punitive damages argument. Nevertheless, the Court is not persuaded that Plaintiff should not be able to argue that he is attempting to deter Defendant officers and other Chicago police officers from future misconduct. However, any argument that he would like to "send a message" to the City implies that the City has a policy or practice of condoning such misconduct, which is not being addressed in this trial. Accordingly, Defendants' motion *in limine* is granted insofar as Plaintiff is barred from any argument that the jury should "send a message" to the City of Chicago. However, Defendants' motion *in limine* is denied insofar as Plaintiff will be permitted to argue that he is attempting to deter Defendant officers and other Chicago police officers from future misconduct. See also *Betts v. City of Chicago*, 2011 WL 1837805, at *9-10 (N.D. Ill. May 13, 2011).

> 8. *To bar evidence, testimony, or argument regarding any complaints listed on Defendant Officers' complaint register histories, Defendant Officers' complaint register histories themselves, the underlying complaint register file in this case, and prior lawsuits*

Defendants argue that evidence of other lawsuits, incidents, and Defendants' disciplinary history should be excluded as irrelevant under Federal Rule of Evidence 401, or as more prejudicial than probative under Federal Rule of Evidence 403. Plaintiff submits that he does not intend to introduce evidence of past misconduct by Defendant Officers or make arguments regarding the Independent Police Review Authority's ("IPRA") investigation of the incidents alleged in the complaint. However, he contends that he may wish to use Defendants' complaint register (CR) file regarding the incident in this case for impeachment, to refresh recollection, or as party admissions.

The jury should not hear evidence of prior complaint registers (or complaint register histories) or prior lawsuits. The jury also should not hear evidence that there was an investigation, the reasons for undertaking the investigation, or the findings and recommendations of IPRA. The potential prejudice from testimony about the IPRA investigation substantially outweighs its questionable probative value, and thus the Court grants Defendants' motion in part. However, statements that Defendants made during the investigation are admissible as party opponent admissions under Fed. R. Evid. 801(d)(2)(A) and may be used as impeachment in the event that one or more Defendants offers testimony at trial that deviates from what was said during the investigation. Any complications that may arise from Plaintiff's perceived need to reference prior statements, while keeping all reference to IPRA out of the case, may be averted by a stipulation – or, absent a stipulation, by carefully framing the questions to the witness – in terms of generic references to prior statements made by Defendants that were accurately transcribed, without reference to the specific context in which the statements were made.

In sum, Defendants' motion to bar evidence, testimony, or argument regarding any complaints listed on Defendant Officers' complaint register histories, Defendant Officers' complaint register histories themselves, the underlying complaint register file in this case, and prior lawsuits is granted in part. The motion is granted insofar as reference to other lawsuits, incidents, and Defendants' disciplinary history is excluded, unless of course the Defendants affirmatively inject into the case inaccurate testimony about their formal records as police officers, in which case the defendants will have opened the door to Plaintiffs' presentation of any evidence to the contrary. See, *e.g.*, *Betts*, 2011 WL 1837805 at *7. With respect to the complaint register file pertaining to the specific incident giving rise to this case, Plaintiff may use Defendants' statements for impeachment or any

**STATEMENT**

other proper purposes under the Rules of Evidence.

   *9.      To bar evidence or argument regarding Defendants alleged failure to call witnesses*

Defendants request that the Court bar Plaintiff from conveying to the jury that Defendants are hiding exculpatory evidence by choosing not to call a particular witness or present certain evidence. Plaintiff contends that it is an accepted routine tactic to point to missing testimony and evidence of an opponent. However, the Court agrees that it would be improper for Plaintiff to insinuate without evidentiary support that Defendants are purposefully attempting to hide evidence, particularly since Plaintiff bears the burden of proving his case. Therefore, the Court grants in part Defendants' motion in limine #9. However, the Court is not barring Plaintiff from arguing that there are deficiencies in Defendants' case due to the absence of testimony by certain individuals or the absence of certain evidence. Rather, it is merely improper for Plaintiff to insinuate that Defendants are purposefully hiding evidence or to imply that Defendants bear the burden of proof. The Court will instruct the jury as to Plaintiff's burden of proof.

   *10.     To bar any mention or arguments during jury selection related to conditioning of the jury to award a specific amount of money*

Defendants ask the Court to bar Plaintiff from inquiring, during jury selection, whether potential jurors think that any amount of money is too little or too much for a certain type of case. In support of their position, Defendants cite cases in which courts have held that "golden rule" appeals are inappropriate. The so-called "golden rule" appeal asks the jury to place itself in Plaintiff's shoes. As the Seventh Circuit has explained, "it is universally recognized as improper because it encourages the jury to depart from the neutrality and to decide the case on the basis of personal interest and bias rather than on the evidence." *United States v. Roman*, 492 F.3d 803, 806 (7th Cir. 2007) (quoting *United States v. Teslim*, 869 F.2d 316, 328 (7th Cir. 1989). Plaintiff agrees that a "golden rule" appeal would be inappropriate. Thus, to the extent that Defendants are seeking a motion in limine barring Plaintiff from a "golden rule" appeal, Defendants' motion is granted in part. However, the Court is not convinced that Defendants' request to bar Plaintiff from inquiring during voir dire regarding damages fits within the rubric of the golden rule. To the extent that Plaintiff asks the Court to inquire about damages during voir dire, Defendants may state their objection at that time. (The parties are reminded that although the Court requests proposed voir dire questions from counsel, the voir dire itself is conducted almost exclusively by the Court.) Defendants' motion as it relates to damages is denied without prejudice.

   *11.     To bar Plaintiff's counsel from making an improper opening statement*

Defendants maintain that Plaintiff's counsel should not be permitted to argue in her opening statement. Plaintiff's counsel has indicated that she is aware of the purpose of opening statements and does not intend to make improper arguments. Additionally, it bears noting that defense counsel apparently cut and pasted this motion from a different case, as Defendants reference a "Defendant Tuman" who is not a defendant or witness in this case and also referenced conduct which Plaintiff's counsel denies having been involved in. (Also, Plaintiff's counsel is a woman, and defense counsel repeatedly refers to her as "he" or "him" throughout his motions in limine, causing some confusion for the Court.) The Court cautions counsel to avoid in the future boilerplate arguments that are not tailored to the case at bar, as it is not an efficient use of the Court's, nor opposing party's, time. Defendants' motion in limine #11 is denied as moot.

   *12.     To bar argument regarding the insufficiency of the investigation or lack of fingerprint evidence*

Defendants' twelfth motion *in limine* appears to be another cut-and-paste motion which references a "Defendant Tuman" and refers to requests to admit which were never issued. Defendants' non-case-specific motion is denied

as moot. However, the Court also notes that Defendants' central argument—that Plaintiff should be barred from commenting on the evidence that supported Defendants' decision to arrest and charge him for possession of a controlled substance with intent to deliver—falls short. In this case, Plaintiff alleges unreasonable seizure, false arrest, and malicious prosecution. The evidence supporting the charges and the investigation conducted by Defendants are central to Plaintiff's claims. Plaintiff agrees that it would be improper to argue that Defendants' failure to take fingerprints equates to a violation of Plaintiff's constitutional rights. However, Defendants appear to seek to bar Plaintiff from making any comment on the quality of the evidence or Defendants' actions in deciding to arrest and charge Plaintiff. The motion is simply too broad.

### III. Defendants' Motion to Direct and Allow the Evidence and Recovered Property Section of the CPD to Bring Evidence to the Courtroom for Presentation at Trial [38]

In the Final Pretrial Order, Defendants listed as trial exhibits sixteen (16) small baggies containing a white powder substance. Plaintiffs object to the introduction of the baggies.

Defendants respond that they will present testimony at trial that on August 16, 2008, Plaintiff was observed approaching two individuals. The two individuals handed him money and Plaintiff bent down to his sock and removed a small packet. Plaintiff then appeared to remove a smaller object from the packet and handed to the individuals an unknown object. Defendants will further testify that it was their belief that a drug transaction had occurred and went to approach the two individuals and Plaintiff. Plaintiff walked away and as Officer Vogt approached him from behind, Plaintiff looked over his shoulder in the officer's direction and quickly threw a small packet to his right hand side. Officer Foley recovered the packet and found it to contain sixteen (16) small ziploc bags containing a white powder substance, suspect heroin. Defendants maintain that the baggies are the evidence recovered by Officer Foley and the Property Inventory Report generated for its storage at the Evidence and Recovery Property Section ("ERPS") of the Chicago Police Department. Defendants contend that the recovered heroin, inventoried as evidence, is relevant pursuant to FRE 401 and 402. According to defense counsel, he has communicated with supervisors at ERPS and has been advised that a Court order is required for a Chicago Police Officer to bring the inventoried evidence to Court for its presentation as an exhibit during the trial.

Defendants' motion to direct and allow evidence is granted. The evidence is relevant to the issues in the case and will assist the jury's understanding of what happened to prompt the arrest.

### IV. Plaintiff's Motions *in Limine* [33]

1. *To bar evidence or testimony regarding alleged gang affiliation or tattoos*

This motion is unopposed and granted.

2. *To bar evidence of prior arrests that did not lead to conviction*

Plaintiff requests that the Court bar evidence regarding his criminal history, including prior arrests for criminal trespass. Plaintiff argues that such evidence would be overly prejudicial, would be used to insinuate he has a bad character, and would be inadmissible under Federal Rules of Evidence 403 and 404(b). Rule 403 provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. Rule 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show

action in conformity therewith," but such evidence "may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident * * *." Fed. R. Evid. 404(b). In determining whether to admit Rule 404(b) evidence, a court must consider whether "(1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close enough in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the evidence has probative value that is not substantially outweighed by the danger of unfair prejudice." *United States v. Diekhoff,* 535 F.3d 611, 617 (7th Cir. 2008) (quoting *United States v. Simpson,* 479 F.3d 492, 498 (7th Cir. 2007)).

Defendants have no objection to excluding Plaintiff's prior arrests that did not lead to convictions. However, with regard to Plaintiff's criminal history, Defendants maintain that the court should reserve ruling on whether or not Plaintiff's entire criminal history is *per se* inadmissible because Plaintiff could open the door by introducing evidence which shows that he did not have a criminal history.

The prejudice resulting from the introduction of evidence of Plaintiff's prior arrests outweighs the limited relevance that such evidence would have in this case. Thus, the Court grants Plaintiff's motion to bar evidence of his prior criminal history. See *Young v. Cook County*, 2009 WL 2231782, at *6 (N.D. Ill. Jan. 27, 2009) (excluding evidence of prior arrests in § 1983 case as "grossly unfairly prejudicial in a way that greatly outweighs its minuscule probative value"). In the unlikely event that Plaintiff opens the door by stating that he has never been arrested, the Court will address Defendants' arguments related to Plaintiff's criminal history at that time outside the presence of the jury.

> 3. *To bar evidence of Plaintiff's past convictions*

Plaintiff alleges that Defendants falsely arrested him and maliciously prosecuted him for possession of a controlled substance. Plaintiff has two convictions from the past ten years, both for possession of controlled substances (2004 and 2005). Federal Rule of Evidence 609(a)(1) provides that felony convictions "shall be admitted" for impeachment if the court determines that the probative value of admitting the evidence outweighs its prejudicial effect. Plaintiff has not disputed that his prior convictions were punishable by more than one year of imprisonment.

The convictions are not for crimes involving "dishonesty for false statement," such that it would be admissible under Rule 609(a)(2) without engaging in the balancing of considerations required by Rule 403. Thus, the question is whether the potential for unfair prejudice substantially outweighs the probative value of the evidence. Admission of convictions other than for crimes involving dishonesty is discretionary. See *United States v. Cavender*, 228 F.3d 792, 798 (7th Cir. 2000). "[C]ourts should be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her." *Gora v. Costa,* 971 F.2d 1325, 1331 (7th Cir.1992). "In exercising his discretion on admission of [prior convictions], the trial judge must consider several factors, most importantly the danger of unfair prejudice. When the prior conviction and the charged act are of a similar nature, the danger increases. The jury is more likely to misuse the evidence for purposes other than impeachment, that is, to regard the prior convictions as evidence of a propensity to commit crime or of guilt, despite instructions to the contrary." *United States v. Shapiro,* 565 F.2d 479, 481 (7th Cir. 1977) (citations omitted); see also *United States v. Cameron*, 814 F.2d 403, 405 (7th Cir. 1987) ("there is considerable danger that evidence that a witness has used illegal drugs may so prejudice the jury that it will excessively discount the witness' testimony"); *United States v. Harding,* 525 F.2d 84, 90 (7th Cir. 1975) (noting that the similarity between a prior drug offense and the present drug offense created a strong risk of unfair prejudice); *Brandon v. Village of Maywood,* 179 F. Supp. 2d 847, 854 (N.D. Ill. 2001) ("The main issue for both of his claims is whether

**STATEMENT**

the officers had reasonable suspicion to believe that he was involved in a drug transaction, and a jury might improperly consider evidence of his prior convictions for similar offenses as an indication that the officers had a reason to suspect him of the same activity here."). Thus, while Plaintiff's credibility may be an important factor in this case, the danger of unfair prejudice that would result from the admission of Plaintiff's prior drug convictions is substantial–there is a significant risk that the jury will improperly credit Defendants' account because Plaintiff previously engaged in drug-related offenses, not because the evidence of his prior criminality reflects on his "truthfulness."

As Defendants point out, courts have discretion to "permit the 'sanitization' of prior-crimes evidence used to impeach" by "concealing the nature or name of the crime" *Schmude,* 556 F.3d at 627 (citing *United States v. Stokes,* 211 F.3d 1039, 1042-43 (7th Cir. 2000)); but see *id.* (noting that "[a]llowing a prior conviction to be used to impeach a witness's testimony is controversial" and is in tension with the concept of "judging the case rather than the parties"). Under that approach, Defendants would be permitted to introduce evidence of two prior convictions, without identifying the fact that the convictions were for drug-related offenses. While some courts have adopted this approach (see, *e.g.*, *Anderson v. City of Chicago*, 2010 WL 4928875, at *2-3 (N.D. Ill. Nov. 30, 2010)), many others have excluded the convictions entirely. Indeed, even *Schmude,* cited by Defendants and by courts that have "sanitized" convictions, recognizes that the "rationale [for allowing a prior crime to be used to undermine testimony] is underinclusive, since many people who have committed a felony have not been caught or if caught have not been convicted [and] every judge is aware that many people who do not have a criminal record will lie in a trial when it is to their advantage." 556 F.3d at 627-28.

In the particular circumstances of this case, the Court concludes that the prudent exercise of discretion militates against permitting even a sanitized version of the prior crimes evidence to be introduced at trial. Two convictions for comparatively minor drug offenses are less probative of truthfulness than one for perjury or fraud. See also *United States v. Boyd*, 833 F. Supp. 1277, 1359 (N.D. Ill. 1993) ("As a general rule, a witness's past drug use is not probative of veracity and thus is not a proper subject for cross examination"). At the same time, the potential for prejudice to Plaintiff is great, and (as noted above), the court of appeals has advised district courts to "be careful to ensure that a civil rights plaintiff's criminal past is not used to unfairly prejudice him or her." *Gora*, 971 F.2d at 1331. Here, the main issue for both of Plaintiff's claims is whether the officers had probable cause to believe that he possessed drugs, and a jury might improperly consider evidence of his prior convictions on similar charges as an indication that he, rather than the officers, would lie about the facts surrounding the interaction between Plaintiff and the officers on this separate occasion. In sum, the Court concludes that the potential unfair prejudice outweighs any value that the convictions would have as evidence of Plaintiff's credibility. See *Schmude*, 556 F.3d at 628.

    4.  *To bar Defendants from characterizing the place of the incident as a "high crime area"*

Plaintiff asks the Court to bar Defendants from eliciting testimony regarding past incidents of gang activity or police calls in the neighborhood where Plaintiff was arrested. Defendants respond that this evidence is relevant and its probative value outweighs any risk of prejudice. To determine whether Defendants had probable cause to arrest Plaintiff, the jury must evaluate "the common-sense judgment of the officers based on a totality of the circumstances," including Plaintiff's "presence in a high crime area." *United States v. Reed,* 443 F.3d 600, 603 (7th Cir. 2006); *United States v. Brown,* 188 F.3d 860, 865 (7th Cir. 1999); *Betts v. City of Chicago, Ill,* 2011 WL 1837805, at *1 (N.D. Ill. May 13, 2011). Accordingly, references to the area where Plaintiff was arrested provides the jury with context and will be permitted. With that said, any such testimony elicited may address (briefly) Defendants' personal experience in the area where the arrest took place and should focus on "objective factual terms" without resorting to sweeping generalizations or belaboring the relevant points. See *Peters v. City of Chicago*, 2011 WL 679911, at *1 (N.D. Ill. Feb. 16, 2011). Subject to those limitations, Plaintiff's fourth

**STATEMENT**

motion in limine is denied.

*5.    To bar Defendants from introducing witnesses' criminal histories*

Plaintiff asks the Court to bar evidence relating to the criminal history of Plaintiff's witnesses, including prior bad acts, arrests and convictions. Plaintiff propounded an interrogatory asking Defendants to "[i]dentify and describe any convictions that you may seek to introduce as impeachment of a witness or for any other purpose at trial." Defendants have not stated what, if any, prior convictions Plaintiff's witnesses have. Rather, Defendants merely state that they "may supplement their [discovery] responses anytime prior to trial." They also failed to respond to Plaintiff's argument that such evidence is irrelevant, unfairly prejudicial, and improper character evidence. Defendant is correct that under the Federal Rules of Evidence, evidence that may be presented at trial "solely for impeachment" is exempt from the otherwise applicable pre-trial disclosure rules. See Fed. R. Evid. 26(a)(3)(A); see also *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 869 (7th Cir. 2005). Nevertheless, Plaintiff's remaining arguments concerning relevance, prejudice, and the proper and improper uses of character evidence remain unanswered and must be answered before any evidence of the criminal history of any witness will be admitted at trial. The Court reserves ruling on this motion in limine; if Defendants wish to introduce evidence of the criminal history of any witness solely for impeachment purposes, counsel must raise the issue in advance of the cross-examination and outside the presence of the jury.

*6.    To bar Defendants from improper bolstering*

Plaintiff moves the Court to bar introduction of Defendant-Officers' awards and commendations as irrelevant under FRE 402, unfairly prejudicial under FRE 403, and improper character evidence under FRE 404(b). Defendants respond that the motion is "improper" because "character or credibility of a witness can be attacked or supported by evidence under certain circumstances." Defendants do not explain how awards or commendations received by the Defendant-Officers would be admissible in this case. Accordingly, Plaintiff's motion is provisionally granted, subject to a showing by Defendants at trial that such evidence is both relevant and not improper character evidence. Additionally, any ruling by the Court will be consistent with the Court's ruling on Defendants' motion in limine #8, in which the Court ruled that reference to other lawsuits, incidents, and Defendants' disciplinary history is excluded, unless Defendants suggest that they are exemplary police officers and open the door to Plaintiffs' presentation of evidence to the contrary. See, *e.g.*, *Betts*, 2011 WL 1837805 at *7.

*7.    To bar reference to Plaintiff's alleged past drug use*

Defendants have not presented any argument that Plaintiff had used or was under the influence of any drug at the time of his arrest. To the extent that Defendants seek to introduce evidence related to past drug use (as in drug use prior to the date in question), the prejudicial effect of that evidence almost certainly will outweigh any probative value and it will be excluded unless Plaintiff affirmatively opens the door by injecting into the case testimony that he never has used drugs in an effort to bolster his own character in the eyes of the jurors. Thus, subject to the caveat stated above, Plaintiff's motion in limine #7 is provisionally granted.

**V.    Conclusion**

For the reasons set forth above, the Court grants in part and denies in part Defendants' motions in limine [32] and grants Defendants' motion to direct and allow evidence [38]. The Court also grants in part and denies in part Plaintiff's motions in limine [33].

**STATEMENT**

Case: 1:09-cv-04837 Document #: 53 Filed: 07/29/11 Page 12 of 12 PageID #:207